UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

)
GENERAL INSURANCE COMPANY OF          )
AMERICA, AMERICAN STATES              )
INSURANCE COMPANY and SAFECO          )
INSURANCE COMPANY OF AMERICA,         )
                        Plaintiffs    )
                                      )
v.                                    )    CIVIL ACTION NO.
                                      )
RPS PRODUCTS, INC. and THE            )
HOLMES GROUP, INC.,                   )    **04-40139FDS**
                        Defendants    )
                                      )

## COMPLAINT FOR DECLARATORY RELIEF

### I.    PRELIMINARY STATEMENT

1.    This is a complaint for declaratory relief and seeks a declaration of the rights of the parties under certain contracts of insurance.

### II.    THE PARTIES

2.    The plaintiff General Insurance Company of America ("General Insurance") is a duly licensed insurance company incorporated in the State of Washington and has a principal place of business at 4333 Brooklyn Avenue N.E., Seattle, WA 98185.

3.    The plaintiff American States Insurance Company ("American States") is a duly licensed insurance company incorporated in the State of Washington and has a principal place of business at 4333 Brooklyn Avenue N.E., Seattle, WA 98185.

RECEIPT # _404373_
AMOUNT $_150.00_
SUMMONS ISSUED ✓
LOCAL RULE 4.1 ✓
WAIVER FORM ✓
MCF ISSUED ✓
BY DPTY. CLK _____
DATE _7-28-04_

936939v1

4.     The plaintiff Safeco Insurance Company of America ("Safeco") is a duly licensed insurance company incorporated in the State of Washington and has a principal place of business at 4333 Brooklyn Avenue, N.E., Seattle, WA 98185.

5.     The defendant RPS Products, Inc. ("RPS") is a corporation that transacts business in Massachusetts and has a place of business at 281 Keyes Avenue, Hampshire, Illinois.

6.     The defendant The Holmes Group, Inc. ("Holmes") is a Massachusetts corporation and has a principal place of business at 1 Holmes Way, Milford, Massachusetts.

III.    JURISDICTION

7.     This Court has jurisdiction over this matter pursuant to the provisions of 28 U.S.C. §§ 1331 and 1332 in that all parties are citizens of different states and there is at least $75,000 in dispute.

8.     The Court may issue declaratory judgments pursuant to the provisions of 28 U.S.C. §§ 2201 and 2202.

IV.    STATEMENT OF THE CLAIM

   A. **Summary Of The Claim**

9.     This claim arises out of a suit ("the complaint") filed in the United States District Court of Massachusetts on July 3, 2003 entitled The Holmes Group, Inc. v. RPS, Products, Inc., Civil Action No.: 03-40146-NMG ("the underlying action") in which Holmes seeks declaratory relief as well as money damages against RPS. A copy of the complaint is attached hereto as Exhibit 1.

2

10.    On March 3, 2004 Holmes, with leave of Court, filed an amended complaint ("the amended complaint"). A copy of the amended complaint is attached hereto as Exhibit 2.

### 1.    Allegations of the Complaint.

11.    The complaint alleges that "[t]his is an action for patent infringement under the patent laws of the United States, Title 35, United States Code" and that "United States Letters Patent 6,425,932 ('the '932 patent') entitled 'Air Purifier,' was duly issued to Holmes on July 30, 2002." (Ex. 1 ¶¶ 3, 6).

12.    The complaint alleges that Holmes is a Massachusetts company that designs, manufactures and distributes household appliances, including air purifiers and that, in 1999, Holmes undertook to develop a new line of air purifiers known as the "Harmony®" line. (Ex. 1 ¶¶ 8, 9). According to the complaint, Holmes also developed, as part of its development effort, the "Harmony® Filter", a unique filter used in Harmony® air purifiers. (Ex 1. ¶ 9).

13.    The complaint alleges that the Harmony® Filter is distinctive because, among other reasons, the same size and type of filter can be used in different size air purifiers. This is accomplished by increasing or decreasing the number of filters used, depending on the size and model of air purifier. (Ex. 1 ¶ 11). In addition, the complaint alleges that "[t]he '932 patent claims, among other things, hanging systems for air filters. The patented Holmes hanging systems are used to achieve the interchangeability of the Harmony® Filters between different Harmony® machines." (Ex. 1 ¶ 12).

14.    The complaint alleges that "RPS markets and distributes filters for use in Holmes Harmony® air purifiers...[that] incorporate a hanging mechanism claimed in the '932 patent." (Ex. 1 ¶ 13).

15.    In Count I, the complaint alleges as follows:

> 15.    RPS has infringed and is continuing to infringe Holmes' '932 patent by making, using, offering to sell, selling and/or importing and/or inducing and/or contributing to others' making, using, offering to sell, selling and/or importing products that embody or use the inventions claimed in the '932 patent.
>
> 16.    Holmes has marked its Harmony Filters and/or the packaging therefor pursuant to 35 U.S.C. § 287.
>
> 17.    RPS has received actual notice of the '932 patent.
>
> 18.    On information and belief, RPS' infringement has been willful and deliberate.
>
> 19.    Holmes has been and will continue to be damaged by RPS' infringement and has been and will continue to be irreparably injured by these activities.
>
> 20.    Holmes does not have an adequate remedy at law.

### 2.    Allegations Of The Amended Complaint

16.    The amended complaint alleges that "[t]his is an action for patent infringement under the patent laws of the United States, Title 35, of the United States Code and for unfair competition and trademark infringement under the Lanham Act, Title 15 of the United States Code" and that the '932 patent and a second patent, United States Letters Patent 6,685,760 ("the '760 patent") were issued to Holmes on July 30, 2002 and February 3, 2004, respectively. (Ex. 2 ¶¶1, 6, and 7).

17.    The amended complaint alleges that "[t]he H600 Replacement Filter is marketed and advertised by RPS as a replacement filter for certain Holmes air cleaner

936939v1

models. The label on the H600 Replacement Filter box prominently displays the claim

that it "Fits Holmes®," and lists the following Holmes® Harmony® Air Purifier Models:

HAP 615, 625, 650, 675, 675RC. This designation is literally false because the RPS

Replacement Filters do not meet Holmes performance standings, a high proportion of the

RPS Replacement Filters are defectively manufactured and, when the RPS Replacement

Filters are placed in one of the Holmes machines that they purportedly 'fit', the RPS filter

will not allow the door to close." (Ex. 2 ¶9).

18.     The amended complaint alleges that "Holmes® Harmony® Air Purifiers

are tested and rated by the American National Standards Institute ("ANSI") and the

American Home Appliance Manufacturers Association ("AHAM"), in accordance with

ANSI/AHAM AC-1-2002 entitled 'American National Standard Method for Measuring

Performance of Portable Household Electric Cord-Connected Room Air Cleaners.' The

ANSI/AHAM ratings for Holmes products are established using genuine Holmes®

filters." (Ex. 2 ¶10). The ANSI/AHAM ratings are designed to permit consumers to

select the appropriate Holmes® Harmony® Air Purifier to clean the air in a particular

room depending on room size and rated machine capacity. In addition, the ANSI/AHAM

ratings establish a "Clean Air Delivery Rate" ("CADR") for pollen, smoke, and dust

which measures the rate at which these contaminants are removed from the air. (Ex. 2

¶¶11-12).

19.     The amended complaint alleges that "[w]hen the RPS H600 Replacement

Filters are substituted for the genuine Holmes® filters in those Holmes® Harmony® Air

Purifier models which RPS claims that the RPS H600 Replacement Filter 'Fits,' each of

the Holmes® models substantially and materially underperforms its rated CADR for each

Case 4:04-cv-40139-FDS    Document 1    Filed 07/28/2004    Page 6 of 23

of the rated contaminants" and that "consumers who purchase a RPS H600 Replacement Filter believing that it 'Fits Holmes' are misled into thinking that the H600 Replacement Filter is a suitable replacement for the proper Holmes® filter when it is not. When consumers use the RPS filter, they will not obtain the air cleaning capacity for which their air cleaner is rated and designed." (Ex. 2 ¶¶13-14).

20.      The amended complaint alleges "upon information and belief, a significant percentage of the H600 Filters sold by RPS are sold to the public with a manufacturing defect that results in their total failure to clean any air at all." (Ex. 2 ¶15). In addition, It is alleged that "[c]onsumers who attempt to use the H600 Replacement Filter in the Holmes® Harmony® 675 air experience an additional problem. When the H600 Replacement Filter is placed in that machine the door will not close properly and the air purifier cannot be used." (Ex. 2 ¶16).

21.      According to the amended complaint, "Holmes has used the Holmes name and marks, in connection with, among other things, air purifiers and parts thereof, including filters" since 1984 and "[t]he 'Holmes' mark is registered in the United States Patent and Trademark Registration Nos. 1,898,796, and 1,955,313." (Ex. 2 ¶¶17 and 18). In addition, Holmes alleges that "RPS misrepresents the H600 Replacement Filter on its Web site as a 'Holmes air filter for HEPA models HAP615, 625, 650, 675, 675 RC, (HAP-600).'" (Ex. 2 ¶19).

22.      In Count I (Patent Infringement), the amended complaint alleges as follows:

> 21.      RPS has infringed and is continuing to infringe both Holmes' '932 patent and its '760 patent by making, using, offering to sell, selling and/or importing and/or inducing and/or contributing to others' making, using, offering to

936939v1

sell, selling and/or importing products that embody or use the invention claimed in the patent.

22.    Holmes has marked its products pursuant to 35 U.S.C. §287.

23.    On information and belief, RPS' infringement has, in whole or in part, been willful and deliberate.

24.    Holmes has been and will continue to be damaged by RPS' infringement and has been and will continue to be irreparably injured by those activities.

25.    Holmes does not have an adequate remedy at law.

23.    The amended complaint alleges in Count II (Unfair Competition), that "RPS advertises and sells its replacement filter, the H600 Replacement Filter, in interstate commerce, and in a nationwide sales campaign, as 'Fits Holmes® HEPA Air Cleaners Models: HAP 615, 625, 650, 675RC'" and that "RPS' H600 Replacement Filters are not acceptable replacement filters for use with Holmes air cleaners." (Ex. 2 ¶¶27-28). In addition, Count II alleges that "[t]he RPS Replacement Filter packaging and nationwide advertising contains false and misleading statements and descriptions concerning replacement air filter applications, misrepresentations of fact, and constitutes unfair competition in violation of 15 U.S.C. §1125(a), [and] the laws of the Commonwealth of Massachusetts." (Ex. 2 ¶29).

24.    In Count III (Trademark Infringement), Holmes alleges as follows:

31.    Holmes® is a registered trademark of Holmes and is inherently distinctive or, at a minimum, has acquired secondary meaning.

32.    RPS's use of the mark "Holmes®" in commerce and in connection with the marketing and advertisement of RPS's own replacement filters constitutes trademark infringement in violation of 15 U.S.C. §1114 and the common law of the Commonwealth of Massachusetts.

936939v1

B.    **Applicable Policy Provisions**

1.    **The General Insurance Policy**

25.    General Insurance issued a commercial general liability policy, No. CP 2369063B to the named insureds RPS and Vista for the period December 31, 1998 to December 31, 1999 (the "General Insurance policy"). The General Insurance policy contains commercial General Liability Coverage Form CG 00 01 96 which provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

\* \* \* \*

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply....

\* \* \* \*

    b.  This insurance applies to:

        (1)  "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

        (2)  "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed . . . during the policy period.

\* \* \* \*

**2. Exclusions**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

   (1)  Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (2)  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

   (3)  Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

\*\*\*\*

b. "Advertising injury" arising out of:

\*\*\*\*

   (2)  The failure of goods, products or services to conform with advertised quality or performance;

\*\*\*\*

**SECTION V – DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

## 2.    The American States Policies

26.    American States issued a commercial general liability policy, No. 01-CE-896091-1, to the named issued RPS Products, Inc. for the period December 31, 1999 to December 31, 2000.   The policy was renewed for the period December 31, 2000 to December 31, 2001 (collectively, the "American States policies").   The American States policies contain Commercial General Liability Coverage Form CG 00 01 07 98 which provides, in pertinent part, as follows:

**SECTION I – COVERAGES**

\* \* \* \*

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply....

        \* \* \* \*

    **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed . . . during the policy period.

        \* \* \* \*

**2. Exclusions**

This insurance does not apply to:

    **a.** "Personal and advertising injury:"

        (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of

10

936939v1

another and would inflict "personal and advertising injury;"

   (2)  Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

   (3)  Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

* * * *

   (7)  Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement;"

* * * *

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters.

* * * *

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

   a.  False arrest, detention or imprisonment;

   b.  Malicious prosecution;

   c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e.  Oral or written publication of material that violates a person's right of privacy;

11

    f.  The use of another's advertising idea in your "advertisement;" or

    g.  Infringement upon another's copyright, trade dress or slogan in your "advertisement."

**3.**    **The Safeco Policy**

27.    Safeco issued a Commercial Liability Catastrophe Coverage policy, No.

UL 2369063, for the period December 12, 1998 to December 31, 1999 (the "Safeco

policy"). The Safeco policy contained Commercial Liability Catastrophe Coverage Form

CI 70 00 3/96, which provides, in pertinent part, as follows:

### COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

#### 1.  Insuring Agreement

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages in excess of "underlying limits" because of "personal injury" or "advertising injury" to which this insurance applies.

    Our right or duty to defend is limited as set forth in DEFENSE AND SUPPLEMENTARY PAYMENTS – COVERAGES A AND B. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurances does not apply. . . .

            \* \* \* \*

    **b.**  This insurance applies to:

            \* \* \* \*

    **(2)**  "Advertising injury" caused by an "offense" committed in the course of advertising your goods, products or services; but only if the "offense" was committed in the "coverage territory" during the policy period.

            \* \* \* \*

**2. Exclusions and Limitations**

This insurance does not apply to:

**a.** "personal injury" or "advertising injury":

    **(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    **(2)** Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

    **(3)** Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured . . .

* * * *

**b.** "Advertising injury" arising out of:

* * * *

    **(2)** The failure of goods, products or services to conform with advertised quality or performance;

* * * *

## DEFENSE AND SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

**1.** We will have the right to participate in the defense of claims or "suits" against the insured seeking damages because of injury or damage to which this insurance applies.

**2.** We will only have the duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury" or "advertising injury" when those damages are not covered by "underlying insurance" or when the applicable limit of insurance of "underlying insurance" has been exhausted. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage", "personal injury"

or "advertising injury" to which this insurance does not apply.

* * * *

## SECTION V - DEFINITIONS

1. **"Advertising injury"** means injury arising out of one or more of the following offenses:

    a. oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    b. Oral or written publication of material that violates a person's right of privacy;

    c. Misappropriation of advertising ideas or style of doing business; or

    d. Infringement of copyright, title or slogan.

* * * *

18. **"Self-insured retention"** means the dollar amount stated in the Declarations. The "self-insured" retention applies only to sums the insured becomes legally obligated to pay as damages. It does not apply to costs for defense or supplementary payments.

* * * *

21. **"Underlying insurance"** means "scheduled underlying insurance" and liability insurance coverage provided by any other insurance policy available to the insured, except such insurance as is specifically purchased to apply in excess of this policy's limits of insurance.

* * * *

23. **"Underlying limits"** means "underlying insurance" or, for damages because of injury or damage to which this insurance applies that are not covered by "underlying insurance", the "self-insured retention".

* * * *

14

### 4.     The Umbrella Policies

28.     American States issued an umbrella liability policy, No. 01-SU-269801-10, to the named insureds RPS Products, Inc. and Vista Solutions, Inc. for the period December 31, 1999 to December 31, 2000. The umbrella policy subsequently was renewed for the period December 31, 2000 to December 31, 2001 (collectively, the "Umbrella policies"). The Umbrella policies contain Commercial Umbrella Coverage Form No. CU 00 01 96 which provides, in pertinent part, as follows:

**SECTION I. – COVERAGE**

We will pay those sums that the insured becomes legally obligated to pay as "ultimate net loss," including liability assumed by the insured in an "insured contract," because of:

* * * *

B.  "Personal Injury," or

C.  "Advertising injury"

which takes place during the policy period . . . .

* * * *

**SECTION III. – EXCLUSIONS**

This insurance does not apply to:

* * * *

M.  "Advertising injury" arising out of:

* * * *

(2)  The failure of goods, products or services to conform with a statement of quality or performance;

* * * *

N.  "Personal injury" or "advertising injury"

    (1)  Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

    (2)  Arising out of oral or written publication of materials whose first publication took place before the beginning of the policy period;

    (3)  Arising out of the willful violation of a penal statu[t]e or ordinance committed by or with the consent of the insured; or

\* \* \* \*

## SECTION V. – LIMITS OF LIABILITY

\* \* \* \*

We shall only be liable for "ultimate net loss" in excess of:

1.  The applicable limits of "scheduled underlying insurance" for "occurrences" covered by "scheduled underlying insurance", lus the limits of any "unscheduled underlying insurance" which also provides coverage for such "occurrences;"

2.  The limits of insurance available to the insured in an underlying policy, scheduled or unscheduled, if greater than the amount required in the Schedule of Underlying Insurance of this policy; or

3.  The "retained limit" for "occurrences" covered only by this policy;

but only up to the amount of our limits of liability as stated in the declarations, due to any single "occurrence."

\* \* \* \*

## SECTION VI. – PAYMENT OF DEFENSE COSTS

\* \* \* \*

B.  We will also investigate and defend the insured against a claim that alleges damages arising out of an "occurrence" which is not covered, in whole or in part, under "scheduled underlying insurance" or "unscheduled underlying insurance" but which

16

seeks damages arising out of an "occurrence" otherwise covered under this policy. The costs and expenses of such investigation and defense are not subject to the "retained limit."

C. We will either investigate and defend an insured or reimburse an insured for such costs of investigation or defense under the circumstances described in A. or B. above, even if the allegations of the "suit" are groundless, false or fraudulent. We will do this only until we make a payment or offer to pay or deposit in court that part of any judgment(s) not exceeding the applicable limits of liability. However, we will have no duty to defend the insured against any "suit" seeking damages to which this insurance does not apply.

\* \* \* \*

## SECTION VIII. – DEFINED WORDS AND PHRASES

\* \* \* \*

A. "Advertising injury" means injury arising out of one or more of the following offenses committed in the course of advertising your goods, products, or services:

1. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

2. Oral or written publication of material that violates a person's right of privacy;

3. Appropriation, without permission of the advertising ideas of others;

4. Passing off your goods, products or services as those of another by misleading others to believe your goods, products or services are those of another; or

5. Infringement of copyright, title or slogan.

\* \* \* \*

P. "Retained limit" is the amount stated in the declarations. Our obligation to pay damages on your behalf applies only to the amount of damages in excess of the "retained limit" for claims for which no coverage is provided by either "scheduled underlying insurance" or "unscheduled underlying insurance."

17

Q. "Scheduled underlying insurance" means the insurance policies listed in the Schedule of Underlying Insurance including any renewal or replacement of such contracts.

* * * *

T. "Ultimate net loss" means the actual sums you are legally obligated to pay as damages for which any insured is legally liable, either through final adjudication on the merits or through compromise settlement with our written consent or direction, because of any "occurrence(s)" covered by this policy.

However, it includes the above-mentioned sums only after deducting for all other recoveries and salvages.

* * * *

U. "Underlying insurer" means any insurer or other organization whose policy or contract provides coverage for an "occurrence" also covered by this policy. But it does not include insurers or organizations whose policies or contracts were purchased specifically to be in excess of this policy. It includes all insurers or organizations providing "unscheduled underlying insurance" or contracts and "scheduled underlying insurance" or contracts.

V. "Unscheduled underlying insurance" means any insurance policies or contracts available to you (whether primary, excess, excess-contingent, or otherwise) except the policies or contracts listed in the Schedule of Underlying Insurance. "Unscheduled underlying insurance" does not include insurance purchased specifically to be excess of this policy.

* * * *

## V.    COUNTS FOR DECLARATORY RELIEF

29.    General Insurance, American States and Safeco restate and reaver paragraphs 1 through 28 above as if fully set forth herein

30.    RPS has requested that General Insurance, American States and/or Safeco provide coverage for the claims which are the subject of the underlying action.

18

31.     General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and the amended complaint do not constitute covered offenses under any of the policies in dispute.

32.     General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and the amended complaint were not caused by and did not arise out of advertising injury or personal injury.

33.     General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and amended complaint fall outside the applicable coverage periods of the policies in dispute.

34.     General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and amended complaint fall outside the terms and conditions of coverage set forth in the policies in dispute.

35.     General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and the amended complaint are excluded by the policies in dispute.

36.     General Insurance, American States and Safeco are without any duty to defend or indemnify RPS for punitive damages because it is contrary to public policy to indemnify an insured for such damages.

VI.     PRAYERS FOR RELIEF

WHEREFORE, General Insurance, American States and Safeco request the Court to:

936939v1

a.    enter judgment declaring that General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and the amended complaint do not constitute covered offenses under any of the policies in dispute;

b.    enter judgment declaring that General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and the amended complaint were not caused by and did not arise out of advertising injury or personal injury;

c.    enter judgment declaring that General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and amended complaint fall outside the applicable coverage periods of the policies in dispute;

d.    enter judgment declaring that General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and amended complaint fall outside

20

the terms and conditions of coverage set forth in the policies in dispute;

e.     enter judgment declaring that General Insurance, American States and Safeco are without any duty to defend or indemnify RPS because the allegations of the complaint and the amended complaint are excluded by the policies in dispute;

f.     enter judgment declaring that General Insurance, American States and Safeco are without any duty to defend or indemnify RPS for punitive damages because it is contrary to public policy to indemnify an insured for such damages; and

g.     grant such other relief as the Court deems meet and just.

JURY CLAIM

The plaintiffs, General Insurance Company of America, American States Insurance Company and Safeco Insurance Company of America, demand a trial by jury on all issues so triable.

936939v1

GENERAL INSURANCE COMPANY OF
AMERICA, AMERICAN STATES
INSURANCE COMPANY and SAFECO
INSURANCE COMPANY OF AMERICA

By their attorney,

MORRISON MAHONEY LLP

Kevin Truland, BBO #503340
250 Summer Street
Boston, MA 02210-1181
Tel. (617) 737-8813

936939v1

22

**04-40139**

JS 44 (Rev. 3/99)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

General Insurance Company of America, American States Insurance Company and Safeco Insurance Company of America

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Kevin Truland        (617) 439-7500
Morrison Mahoney LLP
250 Summer St., Boston, MA 02210-1181

## DEFENDANTS

RPS Products, Inc. and The Holmes Group, Inc.

County of Residence of First Listed _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PLF | DEF |  | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | **PERSONAL INJURY** | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus: | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | | ☐ 555 Prison Condition | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. Section 1332

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE  F. Dennis Saylor, IV   DOCKET NUMBER 4:03-CV-40146FDS

DATE  7/26/04

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____